700 P.2d 954

**STATE of Idaho, Plaintiff-Appellant,**

v.

**Debra Kay SLAYBAUGH, Defendant-Respondent.**

**No. 15184.**

Court of Appeals of Idaho.

May 24, 1985.

Petition for Review Denied Aug. 27, 1985.

Jim Jones, Atty. Gen., Lynn E. Thomas, Sol. Gen., Myrna A.I. Stahman, Deputy Atty. Gen., Boise, for plaintiff-appellant.

Stanton P. Rines (Imhoff & Lynch), Boise, for defendant-respondent.

WALTERS, Chief Judge.

This is an appeal by the state from an order of the district court suppressing a packet of cocaine found in the purse of Debra Kay Slaybaugh when she was booked into jail on a charge of driving while under the influence of an intoxicating beverage. The search of the purse and seizure of the cocaine by the police occurred without first obtaining a search warrant. We reverse the suppression order.

A hearing was held on Slaybaugh's motion to suppress. The following undisputed facts were presented. Debra Slaybaugh was arrested early one morning in Moscow, Latah County, Idaho, on a charge of driving while under the influence. In response to a question concerning the standard procedure for arresting a person for such an offense, the arresting officer—a Moscow City patrolman—testified:

> After making a traffic stop for whatever your reason is for making the stop we'll normally put the person through field sobriety tests. If you have reason to believe that they're driving under the influence. Based upon their driving, your observations, the results of those tests, person be placed under arrest. They're then handcuffed, transported to Latah County Jail. Advised of their rights, advised of Idaho Code 49–352 Reference C, refusal of blood alcohol test. If they accept to take the test the test is given. We use an Intoximeter 3000 is what we normally use when it's functioning. The person is then turned over to the jailer after we complete our booking process. And he completes his. That time the person if they choose can bond out. Or will remain in jail.

The officer recounted the arrest of Debra Slaybaugh. He said:

> After stopping her I advised her of driving that I had seen. I had her perform some field sobriety tests. Based upon that I advised her that she was under arrest for driving under the influence of intoxicating beverages. I handcuffed her. Reached in her car, grabbed her valuables, her purse and things. Took her back—set her purse in the front seat of my car, placed her in the back of my patrol car. I handcuffed her placing her hands behind her back. There was no frisk or search of her person.

Once they arrived at the Latah County law enforcement building, Slaybaugh's purse and other personal effects were given to the jailer. Slaybaugh performed the Intoximeter test and was placed in a holding room. In response to an inquiry from the arresting officer, Slaybaugh indicated that she did not know whether she would "bond out." In accordance with established jail procedure, the jailer proceeded to inventory the contents of Slaybaugh's purse. The jailer found in excess of five hundred dollars in the purse. While he was counting that money, he handed a small, black coin purse to the arresting officer to "look at." In the black coin purse the officer found a folded paper containing a white powder. The officer conducted a preliminary chemical field test on the powder and determined it was cocaine. The officers also discovered in Slaybaugh's purse a short drinking straw and a small mirror. The officer testified that such a mirror and straw commonly were used to inhale cocaine. Based upon the items found in Slaybaugh's purse the officer also placed her under arrest for possession of a controlled substance.

Upon the foregoing facts, the district court granted Slaybaugh's motion to suppress admission in evidence of all items found in the purse. The court reasoned that the warrantless search and seizure did not result from a search incident to arrest and that the seizure could not be justified as an inventory search because the purse could have been secured or held in safe-

keeping by the police without ever viewing or cataloging the contents of the purse. The court's ruling was made shortly after our Supreme Court had decided *State v. Calegar,* 104 Idaho 526, 661 P.2d 311 (1983) and shortly after the United States Supreme Court had decided *Illinois v. Lafayette,* 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). Neither of those cases was cited or discussed by the district court. We believe *Calegar* and *Lafayette* provide the answer to the question whether the evidence in Slaybaugh's purse was permissibly seized.

In *Calegar,* the defendant was arrested following the armed robbery of a grocery store. A suitcase belonging to Calegar was seized from the vehicle in which Calegar was found when he was arrested. Calegar and the suitcase were taken to the police station. Apparently, at the request of the police, Calegar opened the suitcase at the station. No warrant had been obtained to search the suitcase. The suitcase contained money of the same denominations as that taken in the robbery. Calegar moved to suppress the money as evidence. The trial court refused suppression, holding Calegar had freely and voluntarily consented in the police station to the search of the suitcase before it was opened. On appeal, the Idaho Supreme Court upheld the order denying the suppression motion. The Supreme Court expressed three reasons under which the warrantless search could be upheld. First, the court cited *New York v. Belton,* 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), for the proposition that the contents of articles, including open or closed containers, found within the passenger compartment of an automobile may be examined by the police "as a contemporaneous incident to arrest." 104 Idaho at 530, 661 P.2d at 315. The court then held:

> It is clear that the search in the present case falls squarely within the scope of a valid search, as defined in *Belton.* The suitcase was recovered from inside of the automobile that Calegar was in when he was arrested pursuant to a valid warrant. Thus, it was

fully within constitutional limitations to conduct a search of the suitcase at that time. Since the police would have been justified in conducting the search at the time that defendant was arrested in the car, the justification was still present when the search was conducted at the station.

104 Idaho at 530, 661 P.2d at 315.

Next, our Supreme Court considered, in a footnote, the applicability of the inventory search exception to the requirement that searches be conducted under a warrant. The court said:

> Another exception applicable in the present case is the inventory search exception. When suspects are arrested, police officers normally take them and their belongings to the police station. At the station, most employ a routine procedure that involves inventorying and cataloging the various personal items taken from the suspect. An inventory search of this type is said to be a "reasonable" search, and thus falls outside the scope of the fourth amendment. *Under the facts of the present case, such an inventory search could have been conducted.* [Emphasis added.]

*Id.,* n. 4. Finally, our Supreme Court said: "We also agree with the considered opinion of the trial court, which held that the defendant voluntarily consented to the search of the suitcase." 104 Idaho at 531, 661 P.2d at 316.

In the instant case, there is no contention, or proof, that Debra Slaybaugh ever consented either to the seizure of her purse from the front seat of her automobile by the arresting officer or to the search of the purse at the police station. Otherwise, however, this case differs from *Calegar* only in that in *Calegar* an inventory search was not in fact conducted. *See* 104 Idaho at 534, 661 P.2d at 319 (Huntley, J., dissenting).

Here, as with Calegar's suitcase, Slaybaugh's purse was removed from the vehicle at the time of arrest. As with Calegar's suitcase, the purse was taken to the

law enforcement building where it was opened and the contents were examined.

In *United States v. Edwards*, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974), a case cited by our Supreme Court in *Calegar*, involving the search of clothing worn by an arrested defendant, we find the following general observations:

> [I]t is difficult to perceive what is unreasonable about the police examining and holding as evidence those personal effects of the accused that they already have in their lawful custody as the result of a lawful arrest.

415 U.S. at 806, 94 S.Ct. at 1238; and

> *Caruso* [*United States v. Caruso*, 358 F.2d 184 (2d Cir.) *cert. denied* 385 U.S. 862, 87 S.Ct. 116, 17 L.Ed.2d 88 (1966) ] is typical of most cases in the courts of appeals that have long since concluded that *once the accused is lawfully arrested and is in custody, the effects in his possession at the place of detention that were subject to search at the time and place of his arrest may lawfully be searched and seized without a warrant* even though a substantial period of time has elapsed between the arrest and subsequent administrative processing, on the one hand, and the taking of the property for use as evidence, on the other. This is true where the clothing or effects are immediately seized upon arrival at the jail, held under the defendant's name in the "property room" of the jail, and at a later time searched and taken for use at the subsequent criminal trial. The result is the same where the property is not physically taken from the defendant until sometime after his incarceration. [Emphasis added; footnotes omitted.]

415 U.S. at 807–08, 94 S.Ct. at 1239.

A few months after our Supreme Court decided *Calegar*, the United States Supreme Court rendered its opinion in *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983). In *Lafayette*, the Court addressed a warrantless inventory search. The Court held it was reasonable for police, as a part of the routine administrative procedure incident to incarcerating an arrested person, to search any container or article in his possession, in accordance with established inventory procedures.

Applying the principles in *Calegar* and *Lafayette*, we conclude it was permissible for the arresting officer to seize Slaybaugh's purse at the time of her arrest, take it, as well as her other personal effects, to the stationhouse and to conduct an inventory search of the purse under established and routine booking procedures.

The order suppressing the use in evidence of the contents of Slaybaugh's purse is reversed. The case is remanded for further proceedings.

SWANSTROM, J., concurs.

BURNETT, Judge, specially concurring.

The Court's opinion flows logically, if not inexorably, from the cited decisions of the United States Supreme Court and the Idaho Supreme Court. Nevertheless, I write separately to signal my concern over a trend evidenced by these decisions.

It is now widely recognized, and in some quarters enthusiastically welcomed, that the United States Supreme Court is fundamentally reshaping fourth amendment jurisprudence. As we recently noted in *State v. Schaffer*, 107 Idaho 812, 693 P.2d 458 (Ct.App.1984), the Supreme Court has diminished the importance of probable cause in the fourth amendment's warrant clause. The Court also has pared the significance of the warrant clause itself by enlarging the permissible scope of warrantless searches. Today's case illustrates the growth of governmental authority to conduct warrantless searches, free of any fourth amendment restraint, when citizens are arrested.

At first glance, the facts before us seem innocuous. After all, when a woman has been lawfully arrested for allegedly driving under the influence, does it not seem "reasonable" for the arresting officer to remove her purse from the car and for the jailer to conduct a routine inventory of its contents? Indeed, the state argues that the police acted for the woman's own good

and that she would have voiced no complaint if cocaine had not been discovered. But in a free society we are, or should be, vigilant against unnecessary government intrusions upon privacy—even when they are said to be for "our own good."

The officer in this case did not ask Ms. Slaybaugh whether she preferred to take her purse to the police station or to leave it locked in the car. He simply seized it in the exercise of a custodial prerogative. The intrusion may seem inoffensive. But would we be equally complacent if the police—upon making a traffic arrest—searched the interior of a car and then proceeded to seize, open and inventory a private businessman's valise enclosing important personal papers, or a lawyer's briefcase containing confidential client matters, or a traveler's suitcase containing a diary, clothing and intimate effects? I think not.

It is one thing for the government to seize and examine personal property when there is reason to believe the property is connected with a crime or where such action is reasonably necessary to protect the safety of a police officer. But it is quite another for the government to seize, and later to examine at the police station, any or all personal property found inside an automobile without regard to whether it bears a relationship to the arrest, to any other crime, or to the officer's safety. Yet that is precisely what the government is authorized to do under the case law controlling our decision today.

In *New York v. Belton*, 453 U.S. 454, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981), the United States Supreme Court adopted a "bright line" rule governing searches incident to lawful arrests. The Court held that the entire passenger compartment of an automobile may be searched, and any property—including closed containers—may be examined, whenever an occupant or a recent occupant of the car is arrested. The search need not be justified by safety considerations or by suspicion that the property is related to any criminal activity. This broad authority to conduct warrantless searches at the place of arrest is supplemented by the less controversial power to conduct warrantless inventory searches at the police station. There, the police may take property from an arrested individual's possession and examine it in accordance with established inventory procedures. *Illinois v. Lafayette*, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed.2d 65 (1983).

In *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983), the Idaho Supreme Court constructed a bridge between *Belton* and *Lafayette*. The Court said that police officers could search the interior of a car incident to an arrest, remove the property found, and—instead of examining it at the scene—transport it to a police station and examine it there. The aggregate effect of *Belton*, *Lafayette* and *Calegar* is that the police, free from fourth amendment restraint, may seize anything inside the passenger compartment of a car occupied or recently occupied by a lawfully arrested person, and may take the property to the police station for an inventory, regardless of whether the property is the subject of legitimate police interest.

I view with apprehension this growing power of government to make warrantless intrusions into a citizen's personal papers, property and effects. I agree with Justice White, a strong supporter of effective law enforcement, who dissented in *Belton* and who observed that the topic of automobile searches incident to arrest "calls for more caution than the Court today exhibits. ..." 453 U.S. at 472, 101 S.Ct. at 2870. Periodically we must pause to remember that the fourth amendment does not exist to protect lawbreakers. Rather, like other provisions in the Bill of Rights, it exists to prevent an overreaching of governmental power into the private lives of all Americans. A search-and-seizure case may focus narrowly upon a person accused of crime, but in a larger sense it serves as a barometer of the value we place upon our freedom. Today's case shows the barometer falling.