771 P.2d 537

**STATE of Idaho, Plaintiff–Respondent,**

**v.**

**Ronald Eugene RUBIO, Defendant–Appellant.**

**No. 17248.**

Court of Appeals of Idaho.

Feb. 17, 1989.

Petition for Review Denied May 16, 1989.

Frederick G. Loats, Coeur d'Alene, for defendant-appellant.

Jim Jones, Atty. Gen., David R. Minert, Deputy Atty. Gen., for plaintiff-respondent.

SWANSTROM, Judge.

On October 2, 1986, Ronald Rubio was arrested by narcotics officers of the Idaho Department of Law Enforcement who were operating in Coeur d'Alene. Rubio was subsequently charged with the crimes of delivery and of possession of a controlled substance, cocaine. Following the denial of a motion to suppress evidence seized in conjunction with his arrest, Rubio entered a conditional plea of guilty to the charge of possession, reserving his right to appeal the suppression ruling. I.C.R. 11(a)(2). The delivery charge was dismissed. Rubio received a withheld judgment requiring two years probation. He presents two issues on appeal: whether his warrantless arrest was based on probable cause and whether the search following his arrest was valid. We affirm.

Rubio's arrest and the charges brought against him were the result of a month-long criminal investigation into suspected cocaine trafficking in Coeur d'Alene. Police used an informant to place an undercover officer in contact with a cocaine supplier. After an initial purchase from a third party, the officer was introduced to a supplier later identified as Robert Valois. The subsequent investigation entailed a series of monitored cocaine purchases from Valois. Evidence arising out of these purchases led the investigating officers to believe Rubio was Valois' source of cocaine.

Surveillance of Valois' residence established that Rubio made frequent trips to the residence at times which corresponded to the arrangements for cocaine sales. Ru-bio would usually arrive and depart shortly before Valois would leave for the appointed meeting place with the undercover officer. Sometimes the contemplated sale would be delayed by Valois on the claim that he was unable to obtain cocaine from his source. In such a case, shortly after Rubio's arrival at the Valois' residence, Valois would contact the officer to reschedule the sale. On one occasion Rubio acted as driver for Valois. Upon their arrival at the rendezvous Valois informed the officer that the sale would be postponed while the driver went to obtain the cocaine. Additionally, Valois in conversations with the officer would refer to his source as "Ron." "Ron" was also the source identified by the officers' original informant.

On the day of Rubio's arrest, the undercover officer contacted Valois to arrange the purchase of a quarter ounce of cocaine. The officer arrived at Valois' residence and, using recorded currency, made an advance payment of one-half of the total purchase price. The officer left. Rubio was observed arriving a short time later. He remained approximately three minutes. Valois then proceeded to a location agreed upon earlier with the officer. At the meeting, Valois informed the officer that he had only one-half of the cocaine requested. Valois delivered this amount to the officer, saying that his source was presently out of the drug but would be able to obtain the balance later in the day. During this time officers resumed their observation of Rubio and followed him back to his residence. He stopped there briefly, left, and returned to Valois' residence. After a short interval he and Valois exited the residence and left in different vehicles. Valois arrived back at the meeting place, delivered the remainder of the cocaine and was immediately arrested.

At the time of his arrest, Valois was briefly interrogated by the undercover officer. Although disputed by Rubio, the district judge later found that, during this questioning, Valois identified Rubio as his source for cocaine and informed the officer that Rubio was in possession of the proceeds from the earlier sale. Rubio's ve-

hicle meanwhile had been followed by members of the investigation team. The officers following the vehicle were informed of Valois' arrest and of the confirmation of Rubio's suspected role. When Rubio stopped to enter a local bar he was placed under arrest. Rubio was searched incident to his arrest and a portion of the prerecorded purchase money was found. At the county jail he was searched again. This search yielded two small packets or paper bindles of cocaine concealed in a cigarette pack in Rubio's jacket.

## I

Rubio's first argument on appeal focuses on the validity of his warrantless arrest. Rubio contends that absent Valois' incriminating statements, the officers had evidence which at most would establish Rubio's association with Valois and a mere suspicion of involvement with the cocaine sales. This suspicion, Rubio asserts, did not constitute probable cause to make a warrantless arrest; consequently, the searches incident to the arrest cannot be upheld. Rubio also contends that the record fails to establish that the incriminating statements were either actually made by Valois or considered by the officers in their determination of probable cause to arrest Rubio.

■ On suppression questions, our review of probable cause determinations is bifurcated. We defer to the lower court's findings of fact when supported by substantial evidence. However, we exercise *de novo* review over the question whether the facts as found are sufficient. *State v. Montague*, 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988). An arrest without a warrant may be made by a police officer "[w]hen a felony has in fact been committed and [the police officer] has reasonable cause for believing the person arrested to have committed it." I.C. § 19–603. Reasonable or probable cause has been defined by the Idaho courts as information that "would lead a man of ordinary care and prudence to believe or entertain an honest and strong suspicion that [the subject of the arrest] is guilty." *State v. Alger*, 100

Idaho 675, 677, 603 P.2d 1009, 1011 (1979). The standards for probable cause are not technical but instead deal with probabilities. They are factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. *Brinegar v. United States*, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); *State v. Cook*, 106 Idaho 209, 677 P.2d 522 (Ct.App.1984). Consequently, the determination of probable cause does not require certainty of a suspect's guilt, "[r]ather, it deals with the probable consequences of all facts considered as a whole." *State v. Alger, supra* 100 Idaho at 678, 603 P.2d at 1012.

We reject Rubio's contentions and conclude that sufficient probable cause did exist for his arrest. The information in the officers' possession, with the fair inferences to be drawn therefrom, warranted the officers' reasonable belief that Rubio had in fact committed the offense of delivery of a controlled substance. We do not believe the facts and circumstances before the officers constituted a mere suspicion of guilt.

We also disagree with Rubio that the determination of probable cause must be made without the incriminating statements made by Valois. As mentioned above, the district court determined, after a hearing on Rubio's motion to suppress, that Valois had in fact made the statements to the officer. Although disputed evidence was presented regarding the existence or nonexistence of the statements, the evidence in the record supports the district court's finding. Valois, at the suppression hearing, denied having made any such statements. Other evidence presented, however, contradicts Valois' testimony. This evidence includes the testimony of the undercover officer who arrested Valois and his declarations regarding the content of the statements made by Valois when he was arrested. A tape recording made by the officers at the time of Valois' arrest ends prior to any direct questioning of Valois, but does reveal that the undercover officer was asked by his superior to question Valois about the role Rubio played in the cocaine sales. Additionally, Rubio's ar-

resting officer testified to having received notice of Valois' statements over the radio. This is a classic dispute in testimony, typically coming into the arena of the trial court for resolution. As the judge stated, "[T]he issue here is one of credibility. I resolve that issue in favor of the state."

■ We also reject Rubio's argument that the evidence of probable cause must exclude Valois' statements because they were not known to the arresting officers at the moment of his arrest. It is not dispositive, for the purpose of determining the validity of Rubio's warrantless arrest, precisely what information regarding Valois' statements had been conveyed by radio to the officers who arrested Rubio. The arresting officers need not have personal knowledge of all the items of information used to assess the probable cause to arrest Rubio. See United States v. Rose, 541 F.2d 750 (8th Cir.1976), cert. denied, 430 U.S. 908, 97 S.Ct. 1178, 51 L.Ed.2d 584 (1977). It is enough that the collective knowledge and information of all the officers involved in the investigation, when taken together, be sufficient to constitute probable cause. See United States v. Bernard, 623 F.2d 551 (9th Cir.1979).

■ Valois' statements, combined with the results of the officers' surveillance and undercover work constituted sufficient grounds for Rubio's warrantless arrest. As noted above, the surveillance established that Rubio routinely met with Valois immediately prior to the scheduled times for the cocaine sales. These contacts were usually of an extremely short duration and occurred regularly in conjunction with Valois' attempts to sell cocaine. For example, if a sale as originally scheduled was delayed, it was rescheduled or ultimately consummated shortly after Rubio's visit to Valois' residence. The presence of Rubio at Valois' residence, combined with the timing of his frequent visits, comprised a pattern of recognizable criminal activity. This conclusion was in turn supported by other events which tied Rubio to the cocaine sales. On one occasion outside of Valois' residence an officer observed Rubio discreetly passing a small object to Valois.

Also important was Rubio's role as driver to Valois on the occasion of one cocaine sale. Even though these acts are separately and in themselves arguably innocuous, the succession of superficially innocent events had proceeded to a point where a prudent man could say that an innocent course of conduct was substantially less likely than a criminal one. United States v. Patterson, 492 F.2d 995 (9th Cir.1974), cert. denied, 419 U.S. 846, 95 S.Ct. 82, 42 L.Ed.2d 75 (1974).

## II

Rubio's second argument on appeal is that the search carried out by the officers after his arrest, which yielded a small quantity of cocaine, was invalid. This search of Rubio's person occurred at the county jail during booking. It was conducted by the Idaho State Police officer who had transported Rubio to the jail and by one of Rubio's arresting officers who arrived while the first officer was engaged in the booking procedure. The procedure included removing and inventorying personal property in Rubio's possession. During this process, the arresting officer removed a cigarette pack from Rubio's pocket which, upon further inspection, was found to contain a matchbook holding two paper bindles of cocaine. This evidence formed the basis for the possession charge against Rubio.

■ The authority of the police to carry out a routine inventory search of persons arrested is controlled by Illinois v. Lafayette, 462 U.S. 640, 103 S.Ct. 2605, 77 L.Ed. 2d 65 (1983). Under Lafayette, the police may, as part of a routine procedure incident to incarceration, search any container or article in the possession of the person arrested. These searches constitute an exception to the Fourth Amendment warrant requirement and are deemed reasonable based on the goals of securing the arrested person's property and of protecting police or other inmates from potentially dangerous articles being smuggled into a jail or holding facility.

Rubio contends that the search was not a valid inventory search because it was conducted by his arresting officer rather than the custodial officers present at the jail. This challenge to the "routine" nature of the search is without merit. The procedure followed by the police here was not so irregular as to be outside a proper inventory procedure. The procedures followed were not shown to have been conducted for any reason other than the standardized booking process. The mere fact that an arresting officer was present and recovered the specific incriminating evidence does not transform the otherwise apparent character of the search. The purpose was not to circumvent a warrant requirement or to pursue an additional avenue of investigation. *See Colorado v. Bertine*, 479 U.S. 367, 107 S.Ct. 738, 93 L.Ed.2d 739 (1987). The search was, as described by the officer, conducted in concert with the removal by Rubio of all of his belongings for purposes of a complete inventory by the custodial officers. The process used here is not inconsistent with the allowable standards of *Lafayette*. In fact, the arresting officer in *Lafayette* helped conduct the inventory search. Because the search here was undertaken as a normal inventory procedure of Rubio's possessions, the cocaine bindles found in the cigarette pack in his jacket were properly seized as evidence.

We conclude the arrest of Rubio and the searches following that arrest were proper. The order denying Rubio's motion to suppress evidence is affirmed.

WALTERS, C.J., and BURNETT, J., concur.