**IN THE COURT OF APPEALS OF THE STATE OF IDAHO**

**Docket No. 48531**

| | |
|---|---|
| STATE OF IDAHO, | ) |
| | ) **Filed: April 1, 2022** |
| Plaintiff-Respondent, | ) |
| | ) **Melanie Gagnepain, Clerk** |
| v. | ) |
| | ) **THIS IS AN UNPUBLISHED** |
| ERIN MICHELLE SLAUGHTER, | ) **OPINION AND SHALL NOT** |
| | ) **BE CITED AS AUTHORITY** |
| Defendant-Appellant. | ) |
| | ) |

Appeal from the District Court of the Fifth Judicial District, State of Idaho, Bannock County. Hon. Robert C. Naftz, District Judge.

Judgment of conviction for possession of a controlled substance, <u>affirmed</u>; order denying motion to suppress, <u>affirmed</u>.

Eric D. Fredericksen, State Appellate Public Defender; Jacob L. Westerfield, Deputy Appellate Public Defender, Boise, for appellant. Jacob L. Westerfied argued.

Hon. Lawrence G. Wasden, Attorney General; Kacey L. Jones, Deputy Attorney General, Boise, for respondent. Kacey L. Jones argued.

_____

GRATTON, Judge

Erin Michelle Slaughter appeals from her conviction for possession of a controlled substance, Idaho Code § 37-2732(c)(1). Slaughter argues the district court erred when it denied her motion to suppress because it failed to recognize the non-contemporaneous nature of the search incident to arrest. However, because Slaughter's bags were inevitably going to be searched at the jail for inventory purposes, we affirm.

**I.**

**FACTUAL AND PROCEDURAL BACKGROUND**

Law enforcement was called to an apartment for possible trespassing or squatting. Officer Bloxham knocked on the door. When the door was opened, Officer Bloxham recognized Tommy Tea, a person Officer Bloxham knew had a warrant. Officer Bloxham, along with Officer Higbee

1

and Officer Martin, entered the apartment to arrest Tea. Tea was arrested and Officer Martin escorted Tea out to the patrol vehicles. There were four other people in the front room of the apartment. Officers knew these individuals had a history of fleeing or resisting law enforcement. Officer Bloxham gathered names and birthdates to run warrant checks. It was discovered that one of the individuals present in the apartment, Erin Slaughter, had a warrant for her arrest. Officer Bloxham ordered Slaughter to stand up to be handcuffed. As Slaughter stood, she attempted to hand off to another person the two bags that were on her lap. Officer Bloxham did not allow Slaughter to give her bags to another and ordered her to put them on the floor. None of the other individuals in the apartment were patted down or restrained by officers. After dispatch confirmed the warrant, Officer Bloxham informed Slaughter she was under arrest, picked up Slaughter's bags, and escorted her downstairs to the patrol vehicle.

At the patrol vehicle, Officer Bloxham conducted a search of Slaughter's person, simultaneously with Officer Higbee's search of the two bags incident to Slaughter's arrest. The record does not suggest there were any other people in the vicinity. During the search, Slaughter informed Officer Bloxham there was contraband in her bags. Officer Bloxham gave *Miranda*[1] warnings to Slaughter and inquired further. Officer Higbee found syringes, a pipe, and 2.93 grams of suspected methamphetamine in Slaughter's bags.

The State charged Slaughter with possession of a controlled substance. Slaughter filed a motion to suppress alleging that officers had unreasonably searched and seized her in violation of her rights under the Fourth Amendment of the United States Constitution. The district court held a hearing on Slaughter's motion to suppress; Officer Bloxham and Officer Higbee testified. At the end of the hearing, the district court provided a schedule for Slaughter to file a brief on the motion to suppress and for the State to respond. Ms. Slaughter filed her brief on July 24, 2020. Slaughter argued the search was unreasonable because it was not justified by officer safety or possible destruction of evidence at the time of the search. The State filed their objection and response on August 11, 2020. The State argued Slaughter had immediate control of the bags upon her arrest, accordingly, law enforcement conducted a valid seizure and search of the bags incident to her arrest. Furthermore, the State argued inevitable discovery since officers would have inventoried the bags at the jail. After receiving both briefs, the district court issued a written

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

memorandum decision and order denying Slaughter's motion to suppress on September 22, 2020. The district court determined that the officers performed a lawful search incident to arrest that did not extend outside the area of Slaughter's immediate control during her arrest. The district court did not address the State's assertion of the application of the inevitable discovery doctrine.

Slaughter entered a conditional guilty plea to possession of a controlled substance while reserving her right to appeal the district court's denial of her motion to suppress. Slaughter timely appeals.

## II.

## STANDARD OF REVIEW

The standard of review of a suppression motion is bifurcated. When a decision on a motion to suppress is challenged, we accept the trial court's findings of fact that are supported by substantial evidence, but we freely review the application of constitutional principles to the facts as found. *State v. Atkinson*, 128 Idaho 559, 561, 916 P.2d 1284, 1286 (Ct. App. 1996). At a suppression hearing, the power to assess the credibility of witnesses, resolve factual conflicts, weigh evidence, and draw factual inferences is vested in the trial court. *State v. Valdez-Molina*, 127 Idaho 102, 106, 897 P.2d 993, 997 (1995); *State v. Schevers*, 132 Idaho 786, 789, 979 P.2d 659, 662 (Ct. App. 1999).

## III.

## ANALYSIS

Slaughter first argues the district court erred by finding that officers conducted a valid search incident to arrest because the justifications for the search incident to arrest warrant exception were not present at the time of the search. Second, Slaughter argues she did not receive notice or an adequate opportunity to respond to the State's argument that the officers would have inevitably discovered the evidence. We need not address Slaughter's search incident to arrest issue because the State's inevitable discovery argument is dispositive.

The State asserts the evidence would have been inevitably discovered by the inventory search that is lawfully conducted when an arrestee's property is taken to jail with them. In response, Slaughter argues she was denied due process when she was not provided notice of the issue and not provided an opportunity to respond to the inevitable discovery argument. Slaughter asserts that the State did not properly raise the issue of inevitable discovery before or during the suppression hearing and, therefore, she did not have notice of the issue. Slaughter next contends

3

the State was allowed to "ambush" her with the inevitable discovery issue because the post-hearing briefing schedule did not expressly permit her to file a reply brief. Slaughter contends she did not have an opportunity to develop the record to properly rebut the new argument and she may be precluded from addressing the new argument on appeal under the preservation doctrine. Nonetheless, Slaughter argues that if this Court determines the inevitable discovery doctrine was properly raised, then it does not apply because law enforcement did not lawfully seize her bags and, in turn, her bags would not have been subject to an inventory search.

The district court did not address inevitable discovery in its memorandum and order. The right-result, wrong-theory doctrine can be invoked when the lower court finds one theory dispositive and fails to make a finding on the alternative theory. *State v. Hoskins*, 165 Idaho 217, 222, 443 P.3d 231, 236 (2019).

> First, because the lower court did not reach the alternate issue, the appellate court must be satisfied that the parties had adequate opportunity to present evidence and arguments on the alternative issue. In other words, there must be sufficient facts in the appellate record on which to base a decision on alternate grounds. Satisfaction of this condition will usually be dependent on the second condition: the theory on which the lower court decides the issue must not reroute the course of proceedings so that the alternate base does not have a chance to be litigated. That is, the affected party must have the reason and the opportunity to properly respond to the alternate grounds.

*Id.*

Slaughter failed to raise the due process issue in her opening brief. "Ordinarily, an appellate court does not consider arguments raised for the first time in a reply brief because a respondent does not have a full opportunity to respond to those issues." *State v. Hawkins*, 159 Idaho 507, 517, 363 P.3d 348, 358 (2015). However, the right-result, wrong-theory doctrine requires that we ensure Slaughter had an adequate opportunity to respond to the alternate theory of inevitable discovery.

Due process ensures the defendant is provided with notice and an opportunity to be heard. *State v. Rhoades*, 121 Idaho 63, 72, 822 P.2d 960, 969 (1991). The inevitable discovery doctrine was sufficiently raised by the State and Slaughter had an adequate opportunity to address the theory. During the suppression hearing, the State asked Officer Bloxham questions pertinent to the inevitable discovery doctrine:

> Q.   And after, I guess, just for clarification purposes, after Ms. Slaughter was arrested and patted down, would those bags have gone with her to the jail?

4

A.    It would depend on their size.  If they didn't have any contraband in them, then they would likely be accepted into the jail.  However, the jail doesn't often accept items larger than, like, a backpack or a women's purse, and so they would go to the Pocatello Police Department for safekeeping, and she would be provided a receipt.

Q.    And based upon your training and experience, would the bags have been searched at some point one way or the other?

A.    Yes.

Q.    Why is that?

A.    When bags go into the Pocatello Police Department's evidence lockers for safekeeping, we have to double check that there are no perishable items in them or items that spontaneously combust like vapes, things like that, and from my experience, working at the jail, all of those things, for the same reasons, are searched.

The thrust of Officer Bloxham's testimony was about inevitable discovery through an inventory search.  The State quite clearly asks, "Would the bags have been searched at some point one way or the other?"  This is the hallmark of inevitable discovery.  Even though the State never explicitly used the words "inevitable discovery" during the hearing, the concept was raised during the hearing.

Neither party provided oral argument at the suppression hearing.  Instead, the district court scheduled dates for each party to file a brief.  The State argued inevitable discovery in its response brief filed on August 11, 2020.  By doing so, the State explicitly raised the issue before the district court and provided Slaughter clear notice.

On September 22, 2020, forty-two days after the State's response, the district court filed its order.  Post-hearing, Slaughter could have but made no effort to seek clarification as to the scope of the issues, object to the State's briefing on the inevitable discovery doctrine, or move the court for leave to file an additional brief specific to that issue.[2]  *See State v. Tower*, __ Idaho __, __ P.3d __ (2022) ("While this would not normally be required of counsel to preserve the record, there was *no* effort before the district court to clarify the ruling for appeal, and Tower cannot now claim that this lack of clarity supports his position when he had the chance to remedy it below.").  Slaughter had an opportunity to respond to the State's argument, if Slaughter had actually been

---

[2]    In oral argument, Slaughter argued that the briefing schedule was a court order, suggesting that a response would have violated that court order.  This Court does not find her argument persuasive.  There is no reason Slaughter could not file a motion making a request to the district court.  In fact, if filing a motion were considered a violation of the district court's order that would raise a due process issue.

surprised by the argument. Slaughter was not denied due process; she had both notice and an adequate opportunity to address inevitable discovery. Consequently, this Court can address the State's inevitable discovery theory under the right-result, wrong-theory doctrine.

The inevitable discovery doctrine is an exception to the exclusionary rule that was established by the United States Supreme Court in *Nix v. Williams*, 467 U.S. 431, 444 (1984) and adopted by the Idaho Supreme Court in *Stuart v. State*, 136 Idaho 490, 497-99, 36 P.3d 1278, 1285-87 (2001). The inevitable discovery doctrine applies when, by the preponderance of the evidence, the unlawfully discovered evidence would have inevitably been discovered by lawful means. *State v. Rowland*, 158 Idaho 784, 787, 352 P.3d 506, 509 (Ct. App. 2015).

> Although those lawful means need not be the result of a wholly independent investigation, *State v. Buterbaugh*, 138 Idaho 96, 102, 57 P.3d 807, 813 (Ct. App. 2002), they must be the result of some action that actually took place (or was in the process of taking place) that would inevitably have led to the discovery of the unlawfully obtained evidence, [*State v. Bunting*, 142 Idaho 908, 915-16, 136 P.3d 379, 386-87 (Ct. App. 2006)]. Indeed, the inevitable discovery doctrine was never intended to swallow the exclusionary rule by substituting what the police *should* have done for what they really did or were doing. *State v. Holman*, 109 Idaho 382, 392, 707 P.2d 493, 503 (Ct. App. 1985); [*State v. Cook*, 106 Idaho 209, 226, 677 P.2d 522, 539 (Ct. App. 1984)].

*Id.* at 787-88, 352 P.3d at 509-10.

An inventory search is an exception to the Fourth Amendment warrant requirement. *State v. Rubio*, 115 Idaho 873, 876, 771 P.2d 537, 540 (Ct. App. 1989). Officers may search any container or article in the arrestee's possession as part of a routine procedure incident to incarceration. *Id.* This type of search has been "deemed reasonable based on the goals of securing the arrested person's property and of protecting police or other inmates from potentially dangerous articles being smuggled into a jail or holding facility." *Id.*

The district court found that leaving the bags in the apartment with the other unrestrained individuals would put officers at risk that a weapon could be retrieved or evidence destroyed. Slaughter argues an inventory search never should have occurred because the district court was wrong to find the officers validly seized her bags. Slaughter compares the seizure of her bags to impounding a vehicle and argues it was not reasonable for the officers to seize her bags under the circumstances. The State argues officer safety justified removing both Slaughter and her bags from the apartment because officers were outnumbered by individuals that had a history of fleeing or using force to resist law enforcement.

6

The district court was correct to find that the seizure of Slaughter's bags was valid. This Court is not convinced by Slaughter's argument that the seizing of the bags should be analyzed as an impoundment similar to a vehicle. The nature of a personal container, especially one found on or within the immediate control of the arrestee, is distinct from a vehicle. This Court addressed the issue of seizing personal containers upon arrest in *State v. Slaybaugh*, 108 Idaho 551, 700 P.2d 954 (Ct. App. 1985). In that case, we applied the principles in *State v. Calegar*, 104 Idaho 526, 661 P.2d 311 (1983) and *Illinois v. Lafayette*, 462 U.S. 640 (1983) and concluded "it was permissible for the arresting officer to seize [the defendant's] purse at the time of her arrest, take it, as well as her other personal effects, to the stationhouse and to conduct an inventory search of the purse under established and routine booking procedures." *Slaybaugh*, 108 Idaho at 554, 700 P.2d at 957.

Officer Higbee testified that it is common practice for personal items to be seized along with the arrestee:

> Q.     When someone is stopped out on the roadside with other people, you won't allow them to leave their possessions with the people that they're with?
> A.     Not typically, no.
> Q.     Is that a policy that the department has?
> A.     There's no specific policy about it, no. If it's their property, it goes with them where it's their property.
> Q.     And the purpose behind that would be what?
> A.     There is no specific purpose. It's their property, so it's going with their person, who it belongs to?
> Q.     And do you allow people to make choices on what they do with their property?
> A.     If it's on their person at that time we make arrest--
> Q.     So you don't allow them to make choices on their own property; correct?
> A.     At that point, no.
> Q.     But you don't have a particular reason why; correct?
> A.     No. Just due to the fact that it's on their person.

Beyond seizure based upon a valid arrest, the seizure was also reasonable under the circumstances. Slaughter argues she should have been allowed to hand her bags off to another; we disagree. After Officer Martin escorted Tea out of the apartment, there were two officers in the apartment with four civilians. When Officer Bloxham initially detained Slaughter, Slaughter attempted to hand her bags to another person but Officer Bloxham ordered her to place the bags on the floor. This was reasonable for officer safety purposes. Slaughter was the only individual restrained and Officer Bloxham did not know what was in the bags; allowing Slaughter to hand

7

her bags over for another person to have access raises legitimate officer safety concerns. In addition, officers were originally present for trespass concerns at the apartment. Based upon this information, the apartment was not a location at which Slaughter could leave her personal belongings;[3] therefore, the seizure of Slaughter's bags was entirely reasonable under the circumstances.

Because officers could legally require Slaughter to bring her bags with her to the jail, officers could conduct an inventory search if it was part of a routine procedure incident to incarceration. *See Rubio*, 115 Idaho at 876, 771 P.2d at 540. During the suppression hearing, Officer Bloxham explained that typical police procedure is to search all bags at the Pocatello Police Department. For that reason, even if the search of Slaughter's bags after arrest did not occur, the bags would be searched during a routine inventory procedure. Accordingly, the syringes, pipe, and methamphetamine in Slaughter's bags would have been inevitably discovered because the inventory search would lawfully occur distinct from the search incident to arrest. Thus, the district court did not err by denying Slaughter's motion to suppress.

## IV.

## CONCLUSION

Slaughter has failed to show error in the district court's denial of her motion to suppress. Therefore, we affirm the district court's denial of Slaughter's motion to suppress as well as the judgment of conviction.

Judge HUSKEY and Judge BRAILSFORD **CONCUR**.

---

[3] Officers later learned that the individuals were allowed to be in the apartment until 5:00 p.m. that day. This does not change our analysis of the facts. First, at the time of the arrest, officers did not know this information. Second, even though Slaughter and the others were allowed to be in the apartment at the time of her arrest, they were not allowed to remain. Therefore, it was still reasonable to require Slaughter take her bags with her.