844 P.2d 1377

**STATE of Idaho, Plaintiff–Respondent,**

v.

**Reece D. CARR, Defendant–Appellant.**

No. 19587.

Court of Appeals of Idaho.

Dec. 16, 1992.

Petition for Review Denied Feb. 18, 1993.

Bruce H. Greene, Sandpoint, for defendant-appellant.

Larry EchoHawk, Atty. Gen., Douglas A. Werth, Deputy Atty. Gen. (argued), Boise, for plaintiff-respondent.

WALTERS, Chief Judge.

In this case we are asked to determine whether a magistrate erred in denying Reece Carr's motion to suppress marijuana found when Carr was searched after being arrested for driving without privileges. We affirm.

The salient facts may be stated briefly. Carr was stopped by Officer Terry Martin of the Sandpoint City Police Department for driving a vehicle without working brake lights. Carr told the officer he knew the lights were not working. Officer Martin asked for Carr's driver's license and proof of insurance. Carr produced only a California identification card and no proof of insurance. Officer Martin made a radio call to dispatch and requested the dispatcher to run a check on Carr's driving and criminal status based on information available from the identification card. Dispatch responded with information, gathered by teletype from law enforcement authorities in California and other western states, that Carr's driver's license had been suspended or revoked in California. Officer Martin then arrested Carr for driving without privileges, a misdemeanor. I.C. § 18–8001(1). A search incident to the arrest produced a small plastic bag of marijuana from Carr's clothing. As a result, Carr was also charged with possession of not more than three ounces of marijuana, likewise a misdemeanor. I.C. § 37–2732(c)(3), (e).

Carr filed a motion with the magistrate's division to suppress the marijuana. The motion was denied after an evidentiary hearing. Carr then agreed to enter a conditional guilty plea to the offense of possessing marijuana, and the state agreed to dismiss the charge of driving without privileges. Carr appealed to the district court, which affirmed the magistrate's decision. Carr now appeals to this Court, asserting that: (1) his arrest was unlawful; (2) the court should not have considered Officer Martin's personal belief that Carr's license had been suspended and that Carr knew of the suspension; (3) Officer Martin should not have been allowed to testify concerning the dispatcher's information about Carr's driving privileges; (4) the admission of teletypes showing the status of Carr's driver's license was erroneous.

Our review of decisions regarding motions to suppress is bifurcated. We defer to the lower court's findings of fact unless they are clearly erroneous. *State v. Weber,* 116 Idaho 449, 776 P.2d 458 (1989), *citing State v. Heinen,* 114 Idaho 656, 759 P.2d 947 (Ct.App.1988). However, we exercise free review over the lower court's determination as to whether constitutional requirements have been satisfied in light of the facts found. *Id.* Here, the trial court did not make explicit findings of fact. In such a case, the appellate court will examine the record to determine the implicit findings that underlie the trial court's determination, and uphold those implicit findings if they are supported by substantial evidence. *State v. Middleton,* 114 Idaho 377, 757 P.2d 240 (Ct.App.1988). Where, as here, the issues before the appellate court are the same as those considered by the district court sitting in an appellate capacity, the appellate court will review the trial record with due regard for, but independently from, the district court's decision. *Robinson v. Joint School District No. 331,* 105 Idaho 487, 670 P.2d 894 (1983).

We note at the outset that Carr does not challenge the validity of the stop or the fact that probable cause existed for his arrest. Although counsel appeared to challenge probable cause at the magistrate's

level, on appeal to the district court counsel conceded that the stop and arrest were valid to the extent that probable cause existed.

Carr's first argument is that his arrest was otherwise unlawful due to (a) an alleged conflict between statutes; (b) Officer Martin's lack of knowledge regarding Carr's driving privileges; (c) Officer Martin's alleged failure to observe the commission of a crime in his presence; and (d) the state's alleged failure to show that Carr knew he was driving without privileges. We will address each contention in turn.

First, Carr asserts that I.C. § 19–603(1) and I.C. § 18–8001(1) establish that probable cause is not the standard by which arrests for driving without privileges should be judged, and that the statutes required Officer Martin to have had personal knowledge that Carr was driving without privileges before making the arrest. More to the point, he argues that because the offense is not listed in I.C. § 49–1405, which describes the authority to make arrests "the same as upon an arrest for a felony" for enumerated "serious offenses" involving motor vehicles, the offense of driving without privileges is not a serious crime and an arrest for this offense may not be based on probable cause.

■ There is no conflict between the statutes. Code section 19–603(1) states that a peace officer may make a warrantless arrest for a public offense committed or attempted in his presence. An arrest for a public offense, whether a felony or misdemeanor, may be made upon probable cause. *State v. Montague*, 114 Idaho 319, 756 P.2d 1083 (Ct.App.1988). Driving without privileges is a public offense and can be charged as either a felony or misdemeanor. I.C. § 18–8001(3)–(5). Briefly stated, one is guilty of driving without privileges when one drives his vehicle in this state knowing that his driving privileges have been revoked, disqualified, or suspended in this or any other state. I.C. § 18–8001(1). Merely because driving without privileges is not included in the list of vehicular offenses in I.C. § 49–1405 does not negate an officer's

ability to arrest, based on probable cause, for a violation of I.C. § 18–8001(1).

■ Carr also maintains that he was not shown to have committed an offense in Officer Martin's presence, as required in I.C. § 19–603(1), because the officer did not know of the suspension. Essentially, Carr's assertion is that he had to affirmatively tell Officer Martin of the license suspension, or the officer had to know of the suspension by prescience or forewarning by the California court. After being stopped, Carr did not directly tell Officer Martin that he knew that his license was suspended. However, the magistrate found it sufficient that Officer Martin saw Carr driving, inferred a license suspension from Carr's inability to produce a driver's license, and confirmed that inference sufficiently to establish probable cause with the teletype information relayed from dispatch. We find the magistrate's conclusion to be correct.

■ Probable cause to arrest deals with probabilities that a crime has been committed, not absolute certainty, and an officer is allowed to use all his senses and information from reliable sources to determine whether a crime has been committed. *See State v. Rubio*, 115 Idaho 873, 771 P.2d 537 (Ct.App.1989). Presence is also determined by the officer's use of all of his senses combined with the officer's knowledge of the violation. *See State v. Bergeron*, 326 N.W.2d 684 (N.D.1982) (presence is determined by all of the officer's senses, including the observation of a car being driven by a person whose license is later learned by the officer to be suspended). The fact that the officer in this case had not personally and directly learned or been notified of Carr's license suspension when he arrested Carr is not dispositive. An officer in the field may rely on information supplied by other officers, and the collective knowledge of police officers involved in the investigation—including dispatch personnel—may support a finding of probable cause. *State v. Cooper*, 119 Idaho 654, 659, 809 P.2d 515 (Ct.App.1991); *State v. Rubio*, 115 Idaho 873, 771 P.2d 537 (Ct. App.1989).

Carr also asserts that the state never established that Carr knew his privileges had been suspended, as required in I.C. § 18–8001(1). The focus of a motion to suppress is on whether the seized evidence should be suppressed on grounds of an unlawful arrest, not whether the defendant is guilty. I.C.R. 12(b)(3). The question before the magistrate, then, was not whether there was sufficient evidence to convict Carr, but whether Officer Martin had probable cause to arrest. The magistrate found that Officer Martin was able to infer at the scene that Carr knew he was driving without privileges. We reach the same conclusion.

Next, Carr argues that the court erred when it allowed Officer Martin to testify regarding what the dispatcher said and admitted two teletypes run by the dispatcher to determine the status of Carr's driving privileges and criminal history. Carr asserts that the officer's testimony and the teletypes should not have been admitted because they were hearsay.

The hearing on Carr's motion to suppress was to determine whether the marijuana should have been suppressed because the arrest was unlawful, in other words, whether the arrest was based on probable cause. Hearsay evidence can support a finding of probable cause, so long as the source of the evidence is reliable. *State v. Alger*, 100 Idaho 675, 603 P.2d 1009 (1979). In the present case, the hearsay evidence took the form of the dispatcher's statements to Officer Martin regarding the result of the teletype request. Officer Martin testified that he requests teletype information regarding a suspect's driving and criminal status every time he makes an arrest from a vehicle. He stated that of all the arrests he makes, fifty-percent are "out of a vehicle from people driving." He also stated that he has requested and seen literally thousands of such teletypes. The teletypes are identified by time, date, subject, requesting terminal and responding terminal. Considering these circumstances, the magistrate found the dispatcher, when conveying the teletype information, to be reliable and credible. We see no reason to dispute this conclusion.

Finally, Carr argues that the teletypes should not have been admitted because they too were hearsay. Here, the magistrate concluded that the teletype documents were hearsay but admissible as evidence under the public records exception to the hearsay rule in I.R.E. 803(8). We agree with this conclusion. *See State v. McCullough*, 566 So.2d 635 (La.Ct.App. 1990) (teletype messages from police agencies in Alabama were admissible under public records exception when prepared by Alabama law enforcement personnel whose duty involved locating and extraditing persons wanted elsewhere and teletypes were limited to objective facts, not factual findings or investigative conclusions); *People v. Miller*, 150 A.D.2d 910, 541 N.Y.S.2d 257 (1989) (teletype printout obtained by state police showing that defendant's vehicle was the one bearing license plate number written down by victim was admissible under public record exception if properly authenticated and obtained in regular course of police business). *But see State v. Gerhardt*, 115 Ohio App. 83, 184 N.E.2d 516 (1961) (teletype memorandum, with narrative from out-of-state authorities to county sheriff stating that suspects were travelling in specified automobile, possessed burglary tools and were equipped to commit robbery, was hearsay and inadmissible). As noted, however, the focus of the hearing on Carr's motion was to determine if his arrest was unlawful, not to adjudicate his guilt. Hearsay evidence from a reliable source is admissible in such a hearing.

Based on the foregoing, we affirm the order denying the motion to suppress.

SWANSTROM and SILAK, JJ., concur.