## IN THE SUPREME COURT OF THE STATE OF IDAHO
### Docket No. 47695

| | | |
|---|---|---|
| **STATE OF IDAHO,** | ) | |
| | ) | |
| **Plaintiff-Respondent,** | ) | **Boise, May 2021 Term** |
| | ) | |
| **v.** | ) | **Filed: August 3. 2021** |
| | ) | |
| **PATRICIA ANN AMSTUTZ,** | ) | **Melanie Gagnepain, Clerk** |
| | ) | |
| **Defendant-Appellant.** | ) | |
| | ) | |

Appeal from the District Court of the First Judicial District of the State of Idaho, Bonner County. Barbara Buchanan, District Judge.

The decision of the district court is <u>reversed</u>, Amstutz's judgment of conviction is <u>vacated</u>, and the case is <u>remanded</u>.

Eric D. Fredericksen, Idaho State Appellate Public Defender, Boise, attorney for Appellant. Andrea Reynolds argued.

Lawrence Wasden, Idaho Attorney General, Boise, attorney for Respondent. John McKinney argued.

_____

BEVAN, Chief Justice.

Patricia Ann Amstutz appeals from her conviction for driving under the influence of alcohol ("DUI"). Amstutz argues the district court erred in denying her motion to suppress because she was arrested, without a warrant, for a completed misdemeanor offense that occurred outside of the officer's presence. She asserts that her rights under the Idaho Constitution based on this Court's decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019) were violated. We reverse the district court's order denying Amstutz's motion to suppress, vacate her judgment of conviction, and remand the case for further proceedings consistent with this opinion.

### I. FACTUAL AND PROCEDURAL BACKGROUND

In the afternoon of January 27, 2019, Officer Kale White was dispatched to a report of a drunk driver. A citizen had called dispatch to report the drunk driver. The reporting party relayed the license plate number of the suspect vehicle, followed the driver to her house, and watched her park inside the garage. Dispatch ran the plate number and obtained a "vehicle return," which

included the name and address of the driver of the vehicle, which was the same address relayed by the reporting party. Dispatch transmitted the vehicle return to Officer White's in-car computer, and the information displayed on his computer screen. The apparent driver of the suspect vehicle was the appellant, Patricia Amstutz.

Using the address provided on the vehicle return, Officer White drove to Amstutz's house. He remained in his patrol car and waited for a cover officer to arrive. While waiting, he looked at the vehicle return sent to him by dispatch, and he also ran a "driver return." The driver return— also transmitted to him by dispatch—displayed the following on Officer White's computer screen: Amstutz's photograph; her height, weight, and physical description; traffic infractions; and prior convictions for driving under the influence (DUI). The driver return displayed the dates of Amstutz's two prior DUI convictions as 2010 and 2016. Officer White testified that he did not recall if he looked at the dates of Amstutz's prior convictions before exiting his patrol car to make contact with her.

At approximately 3:13 p.m., Officer White approached the front door of Amstutz's home and knocked. Amstutz opened the door. As Officer White explained to Amstutz the purpose of the contact, he was joined by Sergeant Hutter. Amstutz allowed both officers to enter her home. Once inside, Officer White conducted a DUI investigation. Officer White believed he had probable cause to arrest Amstutz. His probable cause finding was based on: the information from the reporting party, his own observations of Amstutz's slurred speech, impaired memory, the smell of alcohol on her breath, her admission that she had consumed a couple cans of beer that day, as well as her inability and/or refusal to perform the different field sobriety tests (FSTs). Officer White told Amstutz that she was being arrested for "driving under the influence." He did not specify whether it was a "felony" or "misdemeanor" offense.

Officer White placed Amstutz in his patrol car and transported her to the Sandpoint Police Department, where he administered a breath test, which showed a breath alcohol content of .230/.229. Officer White then transported Amstutz to the Bonner County Jail. Before exiting his patrol car at the jail, he looked at the driver return again, and verified Amstutz's prior DUI convictions in 2010 and 2016. He then booked Amstutz into jail on a felony DUI charge. About an hour elapsed between Officer White's initial contact with Amstutz and him verifying that this DUI would be her third, and thus, a felony charge. It is undisputed that Officer White did not see Amstutz driving or in a car prior to her arrest, that he first made contact when she opened the door of her home, and that he did not obtain an arrest warrant.

2

The State charged Amstutz with felony DUI. Initially Amstutz pled guilty, but she later filed a motion to withdraw her guilty plea following this Court's decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). The district court granted Amstutz's motion to withdraw her guilty plea. Thereafter, Amstutz moved to suppress the evidence against her on the grounds that her warrantless arrest was unlawful and in violation of this Court's decision in *State v. Clarke*.

During the motion to suppress hearing, Officer White presented the following testimony:

Q. When you got to the house, did you run her specific return prior to going inside[?]

A. Yes. I had parked alongside the curb, waited for my cover officer to arrive. And during that time, I looked at her vehicle registration as well as a vehicle return as a way to identify her. There's a picture of her on the driver return.

Q. So there's a picture of her on the driver return. What other information is [in] that driver's return?

A. There's a list of traffic infractions as well as previous DUI'S on the driver's return.

Q. How are they listed out?

A. It's a wall of texts ranging from oldest to newest. The dates of the convictions are on that return.

Q. And so the dates of conviction — I'm trying to see if we have a copy of it. So you said it has — it goes oldest to newest — does it say DUI and then a conviction date or a charging date?

A. Yes, it will say DUI ALS, then either .08 or .20 depending on if it was excessive or regular along with a "C" specifying the conviction date on there. For the conviction date, there's a "C" on that.

Q. Is there also a bunch of other information in there?

A. Yes, there's height, weight, physical description.

Q. Traffic tickets?

A. Yes, those are in there as well.

Q. So anything traffic related is going to be on that sheet?

A. Correct.

Q. As well as DUI's?

A. In the State of Idaho or even traffic tickets from other states will be in there.

Q. What were the dates of conviction on that for her prior DUI's?

A. There was one in 2010, one in 2016.

Q. And do you recall whether you looked specifically at those DUI dates before you went into the house?

A. I don't recall specifically if I looked at those dates, no.

Officer White testified that when he arrested Amstutz, he did not specify whether it was for a felony; he just told her she was under arrest for driving under the influence. Once they arrived at the police station, Officer White explained misdemeanor bond amounts because "[he] wasn't sure if [it] was a felony at the time." Officer White testified that he knew it was a felony DUI once he looked at the driver's return again, which occurred after he transported Amstutz to the jail.

The district court denied Amstutz's motion on three alternative grounds, holding the warrantless arrest was lawful under: (1) Idaho Code section 49-1405(1)(b); (2) the collective knowledge doctrine; and (3) Idaho Code section 19-603(2). Following the district court's decision, Amstutz accepted an Idaho Criminal Rule 11(f) plea agreement with the State, in which she agreed to plead guilty, reserving her right to appeal from the denial of her motion to suppress. The judgment of conviction was entered on December 31, 2019, and Amstutz filed a timely notice of appeal.

## II. ISSUE ON APPEAL

**1.** Did the district court err in denying Amstutz's motion to suppress?

## III. STANDARD OF REVIEW

"When this Court reviews a district court's order granting or denying a motion to suppress, the standard of review is bifurcated." *State v. Gonzales*, 165 Idaho 667, 671, 450 P.3d 315, 319 (2019) (quoting *State v. Purdum*, 147 Idaho 206, 207, 207 P.3d 182, 183 (2009)). "This Court will accept the trial court's findings of fact unless they are clearly erroneous." *Id*. (citing *State v. Watts*, 142 Idaho 230, 232, 127 P.3d 133, 135 (2005)). Even so, "this Court may freely review the trial court's application of constitutional principles in light of the facts found." *Id*. (citing *State v. Diaz*, 144 Idaho 300, 302, 160 P.3d 739, 741 (2007)).

## IV. ANALYSIS

**A.** **We reverse the district court's decision denying Amstutz's motion to suppress.**

Amstutz's motion to suppress was made on the grounds that her warrantless arrest by Officer White was unlawful based on this Court's decision in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). In *Clarke*, this Court held "the framers of the Idaho Constitution understood that Article I, section 17 prohibited warrantless arrests for completed misdemeanors." *Id*. at 399, 446 P.3d at 457. Article 1, section 17, of the Idaho Constitution provides:

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue without probable cause shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

Interpreting Article 1, section 17, the Court held that a defendant's arrest for misdemeanor battery was unlawful even though it was supported by probable cause, because it occurred outside the officer's presence. We held that the district court should have suppressed the contraband obtained in a search incident to the defendant's arrest as fruit of the poisonous tree. As a result, this Court vacated the defendant's conviction. *Id*. at 400, 446 P.3d at 458.

Here, the district court found Amstutz's warrantless arrest was lawful based on three alternative grounds. First, the court held the warrantless arrest was lawful under Idaho Code section 49-1405(1)(b), which provides "the authority to make an arrest is the same as upon an arrest for a felony when any person is charged with any of the following offenses . . . Driving, or being in actual physical control, of a vehicle or operating a vessel while under the influence of alcohol or other intoxicating beverage."[1] Second, the court held the warrantless arrest was lawful under the collective knowledge doctrine. Third, the court held that the warrantless arrest was lawful under Idaho Code section 19-603(2), which permits a warrantless arrest "[w]hen a person arrested has committed a felony, although not in [the peace officer's] presence."

At oral argument, the attorney representing the State specified: "the district court did come up with three bases and we have only argued one—the collective knowledge doctrine. We are not arguing the other two based on differences in the statutes that were involved. I think that the *Clarke* decision covered all misdemeanors and we can't read it differently than that." In conceding these alternative bases, the State did not raise the issue of whether *Clarke* applies retroactively. Thus, we take it as established for purposes of our analysis that the *Clarke* holding binds the parties as the State agreed in oral argument – even though Amstutz's arrest occurred a few months before *Clarke* was decided. That said, we also recognize that the *Clarke* decision did not state new law; it merely memorialized what the framers of the Idaho Constitution initially intended in limiting an officer's arrest powers for completed misdemeanors. *See* 165 Idaho at 399–400, 446 P.3d at 457–58. Thus, even though Amstutz's arrest occurred a little more than four months before we issued *Clarke*, the law as clarified therein was binding at the time of Amstutz's arrest. Our decision on appeal is thus confined to the district court's second basis on appeal: the collective knowledge doctrine.

---

[1] Idaho Code section 49-1405(1)(b) was held unconstitutional in *Reagan v. Idaho Transportation Dep't*, No. 47865, 2021 WL 1096672 (Idaho Mar. 23, 2021), as amended (Mar. 23, 2021).

In holding that Amstutz's arrest was lawful under the collective knowledge doctrine, the district court relied heavily on the Idaho Court of Appeals decision in *State v. Carr,* 123 Idaho 127, 844 P.2d 1377 (Ct. App. 1992), and concluded:

> Here, the driver return, which included the dates of Amstutz's two prior DUI convictions, was transmitted to Officer White by dispatch before White made initial contact with Amstutz. The fact that [Officer] White did not look at or verify the prior convictions, and thus, did not realize at the time he arrested Amstutz that she should be charged with a felony is not dispositive. The knowledge of [Amstutz's] prior convictions by dispatch personnel, together with [Officer] White's own observations of Amstutz prior to her arrest, her admission about consuming alcohol, and inability and/or refusal to perform the FSTs, are sufficient to support a finding by this Court that probable cause existed to arrest Amstutz for felony DUI and that she was in fact arrested for felony DUI.

Amstutz contends that *Carr* is inapposite. In *Carr*, an officer stopped Carr for driving a vehicle without working brake lights. 123 Idaho at 129, 844 P.2d at 1379. When the officer asked for his license and proof of insurance, Carr produced a California identification card and no proof of insurance. *Id*. The officer made a radio call to dispatch and requested a check on Carr's driving and criminal status based on the information available from the identification card. Dispatch responded that Carr's license had been suspended or revoked in California. *Id*. The officer then arrested Carr for driving without privileges, a misdemeanor. *Id*.

The Idaho Court of Appeals rejected Carr's argument that his arrest was unlawful because the officer lacked sufficient knowledge of his driving privileges, explaining:

> Probable cause to arrest deals with probabilities that a crime has been committed, not absolute certainty, and an officer is allowed to use all his senses and information from reliable sources to determine whether a crime has been committed. . . . The fact that the officer in this case had not personally and directly learned or been notified of Carr's license suspension when he arrested Carr is not dispositive. An officer in the field may rely on information supplied by other officers, and the *collective knowledge* of police officers involved in the investigation-including dispatch personnel-may support a finding of probable cause.

*Id*. at 130, 844 P.2d at 1380 (emphasis added) (citations omitted).

Amstutz correctly argues *Carr* is distinguishable because dispatch spoke with the officer who arrested Carr and notified him that Carr's license had been suspended or revoked, providing the officer with probable cause to arrest Carr for driving without privileges. Conversely here, Officer White did not speak to dispatch personnel regarding Amstutz's criminal history; instead, dispatch simply forwarded Officer White a "driver's return." Officer White testified he did not

recall whether he specifically looked at the dates provided on the driver's return before arresting Amstutz. Once they arrived at the police station, Officer White explained misdemeanor bond amounts to Amstutz because "[he] wasn't sure if [it] was a felony at the time."

While probable cause supporting arrest does not require certainty on the officer's part, it does require that the officer possess some modicum of knowledge that would make it more probable than not that the person being arrested committed a crime. *See State v. Anderson*, 154 Idaho 703, 706, 302 P.3d 328, 331 (2012) ("Probable cause is a flexible, common-sense standard, and a practical, nontechnical probability that incriminating evidence is present is all that is required."); *see also State v. Bishop*, 146 Idaho 804, 816, 203 P.3d 1203, 1215 (2009) (Probable cause exists when "the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been [or is being] committed."). That "knowledge" must be more than information stored in a digital file that the officer could not remember looking at. It is also insufficient to speculate, as the State argued, that someone in dispatch or along the chain of creating the "driver's return" looked at it and therefore that person had some knowledge about Amstutz's criminal driving history that could be imputed to Officer White. While officers can rely on information they are told, such as the information dispatch officers made known to the arresting officer in *Carr*, an arresting officer must be personally aware of that information, rather than simply having it at his disposal in a State-created document or database. Officer White's testimony makes it clear that he arrested Amstutz for misdemeanor DUI; he had probable cause that Amstutz had committed that misdemeanor crime; but he did not possess sufficient knowledge to provide probable cause at the time of arrest that Amstutz had committed a felony and could be arrested without a warrant. It was only after Officer White looked at the driver's return again, after transporting Amstutz to the jail and releasing her to jail booking, that he gained the knowledge sufficient to support probable cause for a felony arrest. By then the arrest had been made for a misdemeanor DUI without a warrant. No amount of knowledge gathered after-the-fact could remedy that situation.

The United States Supreme Court has articulated that although the collective knowledge doctrine eliminates the requirement of personal knowledge, it does not eliminate the requirement of some knowledge. *See United States v. Hensley,* 469 U.S. 221, 232–33 (1985) (the objective reading of a law enforcement flyer or bulletin determines whether police officers can act in reliance on it). Based on the testimony he offered at the motion to suppress hearing, Officer White did not have probable cause that Amstutz had committed a felony at the time he arrested her. In addition, Amstutz argues that the State did not provide evidence that dispatch personnel reviewed, let alone

conveyed, any specific information in the driver's return to Officer White. The State counters that it did present evidence that dispatch personnel had actual knowledge of Amstutz's prior convictions based on Officer White's testimony that "dispatch runs it through the computer system and it returns from the DMV to dispatch, who in turn sends it to me. So they would look at it and then send it to me." The State contends this testimony established that "police dispatch personnel did not blindly forward [Officer White] the DMV results." However, Officer White's perception that dispatch personnel reviewed the information in the report before sending it to him is not sufficient to prove anyone actually looked at the dates of Amstutz's prior convictions, and in particular, that any person at dispatch conveyed such *knowledge* to Officer White. Both parties seek to buttress their positions by relying on *State v. Julian*, 129 Idaho 133, 922 P.2d 1059 (1996), albeit for different reasons. Amstutz cites *Julian* in support of her claim that the arresting officer must possess actual knowledge of the facts supporting an arrest for probable cause to exist. In response, the State submits that *Julian* supports its assertion that probable cause can exist based on information in the officer's possession, regardless of whether the officer specifically relies on it.

In *Julian*, Julian and his wife had a struggle that resulted in Mrs. Julian's arm being broken. 129 Idaho at 134, 922 P.2d at 1060. Mrs. Julian attempted to call 911 but accidentally called a friend. When Mrs. Julian realized her mistake she hung up and the Julians left for St. Luke's Regional Medical Center. *Id*. In the meantime, the friend called the police and reported that he believed Mrs. Julian was being battered by Julian. Ada County dispatched two deputies to the residence. *Id*. After knocking several times with no answer, the deputies entered the home through the unlocked front door. *Id*. Once they were inside, the deputies discovered a blood stained rag sitting on the kitchen counter and items lying on the floor, which evidenced a struggle. As the deputies were searching the home, dispatch told them the Julians were at St. Luke's. *Id*. The deputies left the home and went to the hospital, where they arrested Julian for misdemeanor domestic battery. During a standard inventory search at the Ada County jail a small vial of cocaine fell out of Julian's shoe. *Id*.

Although Julian's arrest citation was for misdemeanor battery, the State charged Julian with aggravated battery and possession of a controlled substance. *Id*. at 135, 922 P.2d at 1061. Julian moved to suppress the items seized during the inventory search. *Id*. The district court suppressed the evidence, holding that an officer can only arrest a defendant for misdemeanor

battery at the scene of a domestic disturbance, and the officers arrested Julian at St. Luke's, not Julian's house, where they believed the battery occurred. *Id*. The State appealed. *Id*.

On appeal, this Court held that although the officers cited Julian for misdemeanor domestic battery, that did not preclude an inquiry into whether an objective assessment of the facts supported a finding of probable cause to arrest for a related felony. *Id*. at 135–38, 922 P.2d at 1061–64. In reaching its decision, this Court examined the general inquiry applicable to probable cause:

> Reasonable or probable cause is the possession of information that would lead a person of ordinary care and prudence to believe or entertain an honest and strong presumption that such person is guilty. *State v. Alger*, 100 Idaho 675, 677, 603 P.2d 1009, 1011 (1979). Probable cause is not measured by the same level of proof required for conviction. *Id*. Rather, it deals with "the factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Id*. (quoting *Brinegar v. United States*, 338 U.S. 160, 175, 69 S.Ct. 1302, 1310, 93 L.Ed. 1879 (1949)).
>
> When reviewing an officer's actions the court must judge the facts against an objective standard. That is, "would the facts available to the officer at the moment of the seizure or search 'warrant a [person] of reasonable caution in the belief' that the action taken was appropriate." *State v. Hobson*, 95 Idaho 920, 925, 523 P.2d 523, 528 (1974) (quoting *Terry v. Ohio*, 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)). Because the facts making up a probable cause determination are viewed from an objective standpoint, the officer's subjective beliefs concerning that determination are not material. *See, e.g., State v. Middleton*, 114 Idaho 377, 381, 757 P.2d 240, 244 (Ct. App. 1988); *State v. Cootz*, 110 Idaho 807, 811, 718 P.2d 1245, 1249 (1986); *see also, Klingler v. United States*, 409 F.2d 299, 304 (8th Cir.1969).

*Id*. at 136–37, 922 P.2d at 1062–63.

Ultimately, this Court concluded that the officer's decision to cite Julian for misdemeanor domestic battery did not foreclose an inquiry into whether an objective assessment of the facts present at the moment of arrest would lead a person of ordinary prudence to conclude that probable cause existed to arrest Julian for a felony. *Id*. at 137, 922 P.2d at 1063.

The State suggests that, as in *Julian*, Officer White possessed and had available to him the information about Amstutz's prior DUI arrests, giving rise to probable cause that she had committed a felony. The State claims that whether Officer White actually subjectively relied on that information is not controlling. Amstutz responds that the critical distinction is that the officers in *Julian* knew, prior to arresting the defendant, the facts providing probable cause for a felony arrest, i.e., they knew that Julian had struggled with his wife at their house, that Mrs. Julian's arm had been broken, and that a piece of cloth with blood on it was found at the house. Conversely, in

the present case, Officer White did not know, prior to arresting Amstutz, of the facts that could have provided probable cause for a felony arrest.

Officer White was permitted to "draw reasonable inferences from the available information in light of knowledge that he has gained from his experience and training" in determining whether he had probable cause to arrest Amstutz. *State v. Kysar*, 116 Idaho 992, 993, 783 P.2d 859, 860 (1989); *United States v. Ortiz*, 422 U.S. 891, 897 (1975); *United States v. Brignoni–Ponce*, 422 U.S. 873, 885 (1975); *Terry v. Ohio*, 392 U.S. 1, 27 (1968). Absent some evidence that Officer White had probable cause that Amstutz's two prior DUI's were within the last ten years, making this a felony offense, the arrest was unlawful. The focus of the inquiry is on the knowledge possessed by the officer at the time the arrest occurs, even if that knowledge is made available by another officer or dispatch. Here, Officer White plainly testified that he could not specifically recall looking at the dates of Amstutz's prior convictions before arresting her. An officer's subsequent discovery of facts that would have permitted a felony arrest in the first instance cannot retroactively justify the initial arrest.

Ultimately, Officer White did not have reasonable grounds to believe Amstutz had committed a felony offense simply because he could have, but did not recall whether he reviewed that information regarding her criminal history. Thus, the district court erred when it held "[t]he fact that [Officer] White did not look at or verify the prior convictions, and thus, did not realize at the time he arrested Amstutz that she should be charged with a felony is not dispositive." Based on the information he knew at the time of the arrest, Officer White arrested Amstutz, without a warrant, for a completed misdemeanor offense that occurred outside of the officer's presence, which violated Amstutz's constitutional rights under *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019).

## V. CONCLUSION

We reverse the district court's denial of Amstutz's motion to suppress. Officer White did not observe Amstutz driving; yet, he arrested her, without a warrant, for driving under the influence of alcohol. Officer White lacked probable cause that the offense would ultimately be charged as a felony. Amstutz's judgment of conviction is vacated and the case is remanded for further proceedings consistent with this Opinion.

Justices BRODY, STEGNER, MOELLER and BURDICK, CONCUR.