# IN THE SUPREME COURT OF THE STATE OF IDAHO
## Docket No. 49099

STATE OF IDAHO,

      Plaintiff-Appellant,

v.

JONATHAN ELSTON BELL,

      Defendant-Respondent.

)
)
)
)
)
)
)
)
)
)
)

Boise, February 2023 Term

Opinion Filed: August 15, 2023

Melanie Gagnepain, Clerk

Appeal from the District Court of the Fifth Judicial District of the State of Idaho, Blaine County. Daniel Dolan, Magistrate Judge.
Ned C. Williamson, District Judge.

The district court's opinion is affirmed.

Raúl R. Labrador, Idaho Attorney General, Boise, attorney for Appellant. Kacey L. Jones argued.

Eric D. Fredericksen, State Appellate Public Defender, Boise, attorney for Respondent. Jenny Swinford argued.

_____

BEVAN, Chief Justice.

This appeal presents another examination of the scope of our holding in *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019). There, we held that an individual may not be arrested without a warrant for a misdemeanor that was completed outside the arresting officer's *presence*. The State of Idaho brings this appeal asserting that the "in the presence of the arresting officer" requirement under *Clarke* can be satisfied by the collective knowledge of more than one officer to establish probable cause. Thus, though the arresting officer here did not witness Jonathan Bell's driving pattern for the DUI, the State argues he had sufficient "collective knowledge" from others to carry out the arrest. The magistrate court agreed with this position below and denied Bell's motion to suppress. However, Bell appealed to the district court, which reversed the magistrate court's decision, concluding that the Idaho Constitution prohibits a police officer from making a warrantless arrest for a DUI committed outside the officer's presence, even if the officer had

1

probable cause for that offense through his collective knowledge from another officer. For the reasons set forth below, we affirm the district court's decision.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

On May 16, 2019, Officer Pallas was off duty and not in uniform when he noticed Bell at an Albertsons grocery store in Hailey, Idaho. Bell appeared to be unsteady on his feet, was having difficulty walking, and appeared confused. Pallas also saw Bell struggle to find his car in the parking lot once he exited the store. As Pallas watched Bell get into the driver's seat of his vehicle and begin to drive, he called Officer Murphy, who was Pallas' training officer and on duty, to report Bell as possibly driving under the influence. Murphy told Pallas to call dispatch, which he did. Pallas gave dispatch a description of the vehicle, the license plate number, and reported that the driver appeared to be intoxicated.

Pallas then left the parking lot, continued onto McKercher Boulevard, and turned right onto Main Street where he parked and waited for Bell to exit the parking lot so Pallas could follow him. Bell, however, drove in a different direction than Pallas anticipated, so Pallas was forced to make a U-turn and as a result could not find Bell's vehicle for a few blocks. When Pallas later located Bell, he did not see Bell violate any traffic laws, so Pallas reported Bell's location to dispatch, ended the call, and drove to the Hailey Police Station to begin his shift. After ending the call with dispatch, Pallas had no further role in the investigation and later arrest of Bell.

While en route to Albertsons after the call from Pallas, Murphy received information from dispatch (that had been provided by Pallas) that there was an intoxicated driver near 911 North Main and the Albertsons grocery store in Hailey. Dispatch stated that the vehicle was a white GMC Acadia with Idaho license plate Y67E registered to an address on North Fourth Avenue. When Murphy arrived at the address provided by dispatch, he saw a white Acadia parked outside. Murphy felt the hood of the vehicle, which was still warm to the touch.

Murphy activated his bodycam and knocked on the home's front door. Bell's minor son answered and told Murphy that they had just returned from the grocery store. The child told Murphy that Bell was driving the car. When Bell came to the door, Murphy asked him to step outside so they could speak to one another. Bell agreed to step outside, and he admitted that he had just returned home from a grocery store. Bell also admitted to consuming five alcoholic

beverages but stated that he had not consumed any alcohol since he returned home. As Bell spoke with Murphy, he was unsteady on his feet and smelled of alcohol.

With this information, Murphy decided to investigate whether Bell had driven under the influence and asked Bell to perform field sobriety tests. Murphy administered the Horizontal Gaze Nystagmus ("HGN") test, which Bell failed. Murphy next had Bell attempt a walk and turn test; however, Bell could not stand in the starting position and attempted to walk before being told to begin. Bell told Murphy he could not complete the walk and turn test and chose not to complete it. Next, Murphy attempted to administer the one leg stand test, which Bell also said he could not complete. Murphy placed Bell under arrest for misdemeanor driving under the influence and transported him to Blaine County Jail to administer a breath alcohol test. Bell provided samples of 0.326 and 0.330.

## B. Procedural Background

Bell was arrested for misdemeanor excessive DUI under Idaho Code section 18-8004(1)(c) and injury to a child under Idaho Code section 18-1501(3)[1]. Bell pleaded not guilty and moved to suppress the evidence, arguing he had been unlawfully seized when Murphy ordered him to exit his residence. Bell also argued that Murphy's request for him to perform standard field sobriety tests constituted a seizure and rendered his subsequent arrest a warrantless arrest for a completed misdemeanor,[2] which this Court ruled (subsequent to Bell's arrest) is impermissible under *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019).[3] Following two hearings, the magistrate court issued its memorandum decision and order denying Bell's motion to suppress. In its decision, the magistrate court reasoned:

> In this case it is clear that Pallas, a Hailey Police Officer, observed Bell driving a motor vehicle on a public roadway. Previous to this driving Pallas observed Bell having difficulty walking and finding his vehicle[.] Pallas believed that [] Bell's motor skills where [sic] an indication of intoxication.
>
> It is recognized by this [c]ourt that the observations of Pallas standing alone did not give Pallas a basis to conduct a traffic stop.

---

[1] The facts that led to the injury to a child charge are not developed in the record, though we presume the charge stems from Bell driving under the influence with his minor child in the vehicle.

[2] "A completed misdemeanor is one which is no longer in progress when the officer arrives on the scene." *State v. Clarke*, 165 Idaho 393, 396 n.6, 446 P.3d 451, 454 n.6 (2019).

[3] Following Bell's arrest, this Court issued its decision in *Clarke*.

The State argues that the collective knowledge of the police is sufficient to allow Murphy to use the additional information of Pallas witnessing Bell driving the motor vehicle on the roadway.

In this case there was direct communication between Pallas and Murphy as to Pallas's concern of Bell's intoxication. This direct communication was supplemented with the additional information provided by Pallas through dispatch. It is clear in this matter that Pallas and Murphy where [sic] working together and it was the collective knowledge of the two officers that gave rise to Murphy contacting Bell and the subsequent arrest of Bell for DUI.

. . . .

In this matter Pallas observed Bell driving a motor vehicle on a public roadway and observed that Bell had difficult [sic] with his balance and appeared intoxicated.[ ] Murphy assisted Pallas in the investigation which started with a consensual encounter at the residence where Bell was contacted. This consensual encounter evolved into an investigative detention when Murphy confirmed that Bell was the driver of the vehicle, that Bell had consumed 5 alcoholic drinks earlier in the day and that Murphy observed the odor of alcohol and [sic] on Bell's person.

After Bell failed the field sobriety test[,] Murphy had probable cause to arrest Bell for a [DUI] that had occurred in the presence of Officer Pallas and Murphy collectively.

. . . .

In this case the misdemeanor of [e]xcessive DUI did occur in the collective presence of Officers Pallas and Murphy of the Hailey Police Department.

Bell then entered a conditional guilty plea to both misdemeanors, reserving the right to appeal the magistrate court's denial of his motion to suppress. Bell then appealed to the district court. Applying *Clarke* and *Reagan v. Idaho Trans. Dept.*, 169 Idaho 689, 502 P.3d 1027 (2021), the district court reversed the magistrate court's order and granted Bell's motion to suppress. The district court explained:

The *Clarke* and *Reagan* Courts recognize the ramifications of the decision to prohibit warrantless arrests for misdemeanors committed outside the presence of an officer. . . . Many aspects of misdemeanor[ ] crimes have been impacted by these decisions, but the Idaho Supreme Court has concluded that state laws and law enforcement tactics must yield to the Idaho Constitution. Protections under [] Article I, § 17 of the Idaho Constitution are designed to protect Idaho citizens' reasonable expectations of privacy against unreasonable searches and seizures. Simply put, there is no authority to make a warrantless arrest for a completed misdemeanor committed outside of the presence of an officer.

The State timely appealed from the district court's decision.

4

## II. STANDARDS OF REVIEW

"When a district court issues a decision while acting in its intermediate appellate capacity, this Court directly reviews the district court's decision." *State v. Guerra*, 169 Idaho 486, 491–92, 497 P.3d 1106, 1111–12 (2021) (citing *State v. Chernobieff*, 161 Idaho 537, 539, 387 P.3d 790, 792 (2016)). "This Court reviews the magistrate court record to determine whether: (1) there is substantial and competent evidence to support the magistrate court's findings of fact; and (2) the magistrate court's conclusions of law are consistent with those findings." *Id.* (citing *Pelayo v. Pelayo*, 154 Idaho 855, 858, 303 P.3d 214, 217 (2013)). "If those findings are so supported and the conclusions follow therefrom and if the district court affirmed the magistrate's decision, we affirm the district court's decision as a matter of procedure." *Id.* at 492, 497 P.3d at 1112 (quoting *Pelayo*, 154 Idaho at 858, 303 P.3d at 217). This Court does not review decisions rendered by the magistrate court. *State v. Phipps*, 166 Idaho 1, 4, 454 P.3d 1084, 1087 (2019) (quoting *Pelayo*, 154 Idaho at 858, 303 P.3d at 217). Rather, this Court is procedurally bound to affirm or reverse the district court's decision. *Id.*

Where we review a decision on a motion to suppress evidence, we apply a bifurcated standard of review. *Clarke*, 165 Idaho at 396, 446 P.3d at 454. This Court "gives deference to the trial court's findings of fact, which will be upheld so long as they are not clearly erroneous." *State v. Bishop*, 146 Idaho 804, 810, 203 P.3d 1203, 1209 (2009). "Findings of fact are not clearly erroneous if they are supported by substantial and competent evidence." *Id.* Likewise, "[d]ecisions regarding the credibility of witnesses, weight to be given to conflicting evidence, and factual inferences to be drawn are. . . within the discretion of the trial court." *Id.* That said, "this Court freely reviews the trial court's application of constitutional principles in light of the facts found." *Clarke*, 165 Idaho at 396, 446 P.3d at 454.

## III. ANALYSIS

Bell's arrest occurred before this Court decided *Clarke*. Even so, this Court recognized that *Clarke* "merely memorialized what the framers of the Idaho Constitution initially intended in limiting an officer's arrest powers for completed misdemeanors" and consequently "the law as clarified therein was binding." *State v. Amstutz*, 169 Idaho 144, 147, 492 P.3d 1103, 1106 (2021). In *Clarke*, we determined that the "framers of the Idaho Constitution understood that Article I, [s]ection 17 prohibited warrantless arrests for completed misdemeanors." 165 Idaho at 399, 446 P.3d at 457. As a result, while Bell's arrest occurred before *Clarke* was decided, the prohibition

against warrantless arrests for completed misdemeanors has been part of Idaho's law since our State's founding, even if it was not clearly enunciated until *Clarke*. Accordingly, its holding applies here.

The State asks this Court to reverse the district court's order on intermediate appeal, which reversed the magistrate court's denial of Bell's motion to suppress. The State contends that the collective knowledge doctrine satisfies the "in the presence of an officer" requirement recognized by this Court in *Clarke*. Bell argues, alternatively, that while the collective knowledge doctrine allows an officer to develop probable cause from multiple sources, or for authority to be delegated for a lawful felony arrest through information gathered collectively, that doctrine does not apply to the *presence* requirement from *Clarke* when the "present" officer did not witness the conduct that would justify the arrest for a misdemeanor. Put simply, the dispositive issue here is whether a police officer violates Article I, section 17 of the Idaho Constitution, as interpreted in *Clarke*, when making an arrest for a misdemeanor offense supported by probable cause that did not occur in the officer's presence. For the reasons below, we hold that officers cannot bifurcate the presence and probable cause requirements recognized in *Clarke*.

In *Clarke*, this Court relied on precedent and the arresting authority of an officer at the time our Constitution was adopted, explaining that "an officer, at common law, was not authorized to make an arrest without a warrant, for a mere misdemeanor not committed in his presence." *Id.* at 399, 446 P.3d at 457 (quoting *John Bad Elk v. United States*, 177 U.S. 529, 534 (1900)). From that history, this Court determined that "based upon the state of the common law in 1889," the framers intended Article I, section 17 of the Idaho Constitution to prohibit warrantless arrests for completed misdemeanors. *Id.* Thus, for misdemeanors, a warrantless arrest may occur only if the offense was *committed* in the *arresting officer's presence*. *See id.* at 399–400, 446 P.3d 457–58.

This Court revisited *Clarke* two years later to decide whether its holding extended to administrative proceedings and the suspension of driving privileges for a DUI. In *Reagan v. Idaho Transp. Dep't.*, a concerned citizen reported a possible intoxicated driver to the local police department. 169 Idaho 689, 692, 502 P.3d 1027, 1030 (2021). The citizen followed the driver through town and eventually to the driver's residence. *Id.* An officer came to the residence, confirmed that the driver was in fact intoxicated, and then arrested her for a misdemeanor DUI. *Id.* at 692–93, 502 P.3d at 1030–31. This Court determined that "inasmuch as Reagan was arrested without a warrant for a misdemeanor DUI completed outside the officer's presence, section 49-

1405(1)(b) did not provide a legal basis for the arrest." *Id.* at 696, 502 P.3d at 1034. Therefore, we held that the arrest violated Article I, section 17 of the Idaho Constitution. *See id*.

The collective knowledge doctrine allows an officer to gather information from various sources—bulletins, dispatch, fellow officers, and so forth—to support a finding of probable cause. "The United States Supreme Court has articulated that[,] although the collective knowledge doctrine eliminates the requirement of personal knowledge, it does not eliminate the requirement of some knowledge." *Amstutz*, 169 Idaho at 149, 492 P.3d at 1108 (citing *United States v. Hensley*, 469 U.S. 221, 232-33 (1985)). But under the collective knowledge doctrine, an arrest must still reflect the protections afforded under Article I, section 17 of the Idaho Constitution:[4]

> The right of the people to be secure in their persons, houses, papers and effects against unreasonable searches and seizures shall not be violated; and no warrant shall issue *without probable cause* shown by affidavit, particularly describing the place to be searched and the person or thing to be seized.

IDAHO CONST. art. I. § 17 (emphasis added).

The State argues that under the collective knowledge doctrine, and considering the observations and knowledge of both Pallas and Murphy, Bell committed a crime in "the presence of the Hailey Police department"; therefore, his warrantless arrest was lawful. The State attempts to distinguish the facts here from *Clarke* and *Reagan* by suggesting the district court overlooked a defining aspect of this case: Bell committed a crime in the presence of *an officer*—Reagan and Clarke did not. The dissent also tries to distinguish *Reagan* from Bell, pointing out that *Reagan* concerned a citizen's report, which rendered the collective knowledge doctrine inapplicable. But these distinctions are of no moment to the constitutional requirement prohibiting warrantless misdemeanor arrests that occur outside the presence of the *arresting officer*.

Indeed, the problem with this premise is that the off-duty officer who observed Bell's apparent markers of intoxication did not complete the arrest. While "presence" of an officer is one required element of *Clarke* and the cases applying it, the same officer who is present must also personally observe the alleged illegal conduct that subjects one to a warrantless arrest for a misdemeanor. The State's proposed application of *Reagan* and *Clarke* misconstrues this limiting principle from these cases. We made clear in both cases that Article I, section 17 of the Idaho

---

[4] Because Bell does not challenge the constitutionality of his arrest under the Fourth Amendment, we do not consider the United States Constitution here.

Constitution prohibits an arrest for a misdemeanor offense that occurs outside the presence of the *arresting* officer—not merely *an officer* or his "department." *See Reagan*, 169 Idaho at 696, 502 P.3d at 1034 ("Reagan was arrested without a warrant for a misdemeanor DUI completed outside *the* officer's presence") (emphasis added). The State proposes that this Court adopt "an interpretation of the presence requirement that permits warrantless misdemeanor arrests where the offense was committed in the presence of an officer and that officer's observations were communicated to the arresting officer." Under its proposed rule, the State argues there is no need for an additional requirement that the arresting officer *observe* the offense. Rather, the State contends that when a misdemeanor is committed in the presence of a police officer and that information is relayed to dispatch, the arrest of the misdemeanant by another police officer within a reasonable time of receipt of that information satisfies both prongs of *Clarke*. We disagree. The State relies on a series of persuasive authorities from other jurisdictions in support of its position, but we are bound by the Idaho Constitution, and how other jurisdictions have interpreted the collective knowledge doctrine is of little consequence to its application in Idaho. *Clarke*—as we have explained—was a memorialization of what the framers intended, and under that requirement, a warrantless arrest is permissible only when the misdemeanor was *committed* in the arresting officer's *presence*. *Clarke*, 165 Idaho at 399–400, 446 P.3d at 457–58.

The State relies on authorities from outside Idaho, primarily *State v. Lyon*, 706 P.2d 516, 520 (N.M. Ct. App. 1985), to support its position here. The *Lyon* court held that

> when a misdemeanor is committed in the presence of a police officer and information of such is promptly placed on the police radio or otherwise communicated and a description of the misdemeanant given, the arrest of the misdemeanant by another police officer within a reasonable time of receipt of the information is valid.

*Id.* While this statement may be correct under New Mexico law, and "presence" may be interpreted broadly, New Mexico has not adopted the same requirement that exists under *Idaho's* constitution–that to be arrested for a misdemeanor that crime must have occurred in the arresting officer's presence. And the State has not pointed to anything in Idaho's history that suggests a law enforcement officer could arrest an individual for a completed misdemeanor if that misdemeanor was committed in the presence of *any* officer. The other non-Idaho authorities cited by the State suffer from the same infirmity.

8

The problem for the State here is that neither officer had both presence and probable cause to arrest. Pallas may have suspected Bell was intoxicated, but he did not smell alcohol, hear Bell speak, witness driving errors, or observe other signs of intoxication. Indeed, Pallas conceded that his observations of Bell amounted only to reasonable suspicion, and the State has not challenged this conclusion on appeal. In short, Pallas acknowledged he lacked probable cause that Bell committed a crime. While he was near Bell in the Albertsons parking lot, Pallas's observations do not satisfy the "presence" requirement under *Clarke*; Pallas did not have probable cause that Bell committed a crime. This does not mean, as the dissent postulates, that officers can no longer rely on information provided by dispatch to develop probable cause to make an arrest. Officers *can* rely on that information to seek an arrest warrant from a magistrate.

Turning then to Murphy, after Pallas observed Bell drive away and communicated that information to dispatch, dispatch gave Murphy the description of Bell's vehicle along with the vehicle's license plate and its registered address. Murphy responded to that address, where he found Bell's vehicle. Murphy did not observe Bell driving. Murphy knocked on the door and asked Bell to step outside to speak with him, which Bell did. On exiting the house, Murphy, like Pallas, observed Bell unsteady on his feet and noted the smell of alcohol. Murphy investigated further and asked Bell to perform field sobriety tests, which Bell agreed to do. Bell subsequently failed the Horizontal Gaze Nystagmus test, could not complete a walk and turn test, and could not complete a one leg stand test. After failing these field sobriety tests, Murphy told Bell he was under arrest for misdemeanor DUI. Murphy's interaction with Bell is the converse of Pallas's. Murphy developed probable cause that Bell was intoxicated after Bell's unlawful driving had been completed. Thus, Murphy was not *present* when Bell committed the misdemeanor.

Relying on *Amstutz,* the dissent points out that we have previously specified that an arresting officer may rely on the information received from dispatch. We do not depart from that view now, but by the time Murphy arrived, and probable cause was developed, the misdemeanor was complete. Bell was already inside his residence. No amount of after-the-fact information sharing can overcome the Article I, section 17 prohibition against warrantless arrests for misdemeanors. A warrant is necessary for a completed misdemeanor, even when—as the dissent frames it—the investigation was good police work.

Bell had likely driven while intoxicated, given the excessive level of his breath alcohol test, his warm car, and the other information and behavior that led to the collective knowledge for

9

probable cause, but that is no different than Clarke, who likely committed a battery, or Reagan, who likely committed a DUI. *See Clarke*, 165 Idaho at 394–95, 446 P.3d at 452–53; *Reagan*, 169 Idaho at 692, 502 P.3d at 1030. For all three of these individuals, the constitutional principle requiring the arresting officer to observe the misdemeanor conduct was absent. Thus, Murphy had probable cause but no presence; Pallas had presence but no probable cause. These are distinct requirements stemming from different constitutional sources. A surplus of one cannot make up for a deficit of the other. Both are required under Article I, section 17. *Clarke*, 165 Idaho at 399, 446 P.3d at 457.

Below, the district court concluded that "the collective knowledge doctrine may provide sufficient facts to justify a warrantless arrest but Article I, section 17 of the Idaho State Constitution prohibits such a warrantless arrest." Indeed, the district court explained, "in light of the Idaho Supreme Court's recent decisions. . . the [c]ourt finds that the collective knowledge doctrine does not allow a peace officer to make a warrantless arrest for a DUI committed outside of the officer's presence." This was the proper conclusion, and it aligned with the holdings from both *Clarke* and *Reagan*, applying Idaho's Constitution that prohibits a warrantless arrest for a misdemeanor completed outside the presence of the officer. *See, e.g.*, *Reagan*, 169 Idaho at 698, 502 P.3d at 1036 (explaining that the Idaho Constitution does not permit an arrest for a misdemeanor DUI that the officer did not witness); *see also Amstutz*, 169 Idaho at 150, 492 P.3d at 1109 (holding that a warrantless arrest of Amstutz for a completed misdemeanor that occurred outside the officer's presence violated Amstutz's constitutional rights).

While the dissent voices concern over the "legion" of repercussions this holding will have for law enforcement, we disagree. "Exceptions to the warrant requirement are 'few in number and carefully delineated,' and . . . police bear a heavy burden when attempting to demonstrate [that] an urgent need. . . justif[ies] warrantless . . . arrests." *State v. Blancas*, 170 Idaho 631, 515 P.3d 718, 721 (2022) (alterations original) (quoting *Welsh v. Wisconsin*, 466 U.S. 740, 749–50 (1984)). To effectuate an immediate arrest for a misdemeanor crime *without a warrant*, the arresting officer must witness the unlawful conduct personally. Collective knowledge, such as information from officers going off duty, from dispatch, or from concerned citizens, may undeniably fashion probable cause for a misdemeanor arrest. But an officer, such as Murphy here, or any other in the future, who relies on collective knowledge to establish probable cause for a misdemeanor must obtain a warrant to perform such an arrest.

## IV. CONCLUSION

The district court's decision reversing the denial of Bell's motion to suppress is affirmed.

JUSTICES BRODY, STEGNER, and ZAHN CONCUR.

MOELLER, J., dissenting.

I write briefly to register my dissent. Because I had not yet joined the Court when it heard *State v. Clarke*, 165 Idaho 393, 446 P.3d 451 (2019), I did not participate in that decision. However, I later authored *Reagan v. Idaho Transportation Department*, 169 Idaho 689, 502 P.3d 1027 (2021), where we followed the holding in *Clarke* and applied it to the suspension of driving privileges for a DUI in an administrative proceeding. Likewise, I joined the majority in three other decisions where we cited *Clarke* with approval: *State v. Plata*, 171 Idaho 833, 526 P.3d 1003 (2023); *State v. Amstutz*, 169 Idaho 144, 492 P.3d 1103 (2021); and *State v. Sutterfield*, 168 Idaho 558, 484 P.3d 839 (2021). While I have accepted the constitutional premise of *Clarke*, and comfortably applied it to the cases noted above, I have had reservations about how far the holding reaches and how it is to be applied by law enforcement. This case confirms many of my concerns. In short, while I have been on board the *Clarke* train for almost four years, it is here that I must disembark.

The facts of this case provide an ideal scenario for applying the "collective knowledge doctrine," which has long been recognized by appellate courts of both the United States and Idaho. For example, the Ninth Circuit has followed this doctrine, noting:

> [The collective knowledge doctrine] allows courts to impute police officers' collective knowledge to the officer conducting a stop, search, or arrest. It generally applies in two situations. The first is "where law enforcement agents are working together in an investigation but have not explicitly communicated the facts each has independently learned." *United States v. Ramirez*, 473 F.3d 1026, 1032 (9th Cir. 2007). The second occurs "where an officer . . . with direct personal knowledge of all the facts necessary to give rise to reasonable suspicion . . . directs or requests that another officer . . . conduct a stop, search or arrest." *Id*. at 1033. In both situations, collective knowledge may be imputed only if there has been some "communication among agents." *Id*. at 1032.

*United States v. Villasenor*, 608 F.3d 467, 475 (9th Cir. 2010) (emphasis omitted); s*ee generally United States v. Hensley*, 469 U.S. 221, 232 (1985).

Likewise, the Idaho Court of Appeals invoked the collective knowledge doctrine in *State v. Rubio* where it held: "The arresting officers need not have personal knowledge of all the items of information used to assess the probable cause to arrest Rubio. It is enough that the collective

knowledge and information of all the officers involved in the investigation, when taken together, be sufficient to constitute probable cause." 115 Idaho 873, 876, 771 P.2d 537, 540 (Ct. App. 1989) (citations omitted); s*ee also State v. Carr*, 123 Idaho 127, 130, 844 P.2d 1377, 1380 (Ct. App. 1992) ("An officer in the field may rely on information supplied by other officers, and the collective knowledge of police officers involved in the investigation—including dispatch personnel—may support a finding of probable cause.").

In *State v. Amstutz*, this Court recently distinguished its facts from *State v. Carr*, where collective knowledge permitted a warrantless misdemeanor arrest. 169 Idaho at 148, 492 P.3d at 1107. We explained:

> Amstutz correctly argues *Carr* is distinguishable because dispatch spoke with the officer who arrested Carr and notified him that Carr's license had been suspended or revoked, providing the officer with probable cause to arrest Carr for driving without privileges. Conversely here, Officer White *did not speak to dispatch* personnel regarding Amstutz's criminal history . . . .

*Id*. (emphasis added). This Court clarified the correct application of the collective knowledge doctrine: "While officers can rely on information they are told, such as the information dispatch officers made known to the arresting officer in *Carr*, an arresting officer must be personally aware of that information, rather than simply having it at his disposal in a State-created document or database." *Id*. While the majority is correct that the *Amstutz* decision focused on the arresting officer's lack of knowledge, we specified that the arresting officer may rely on the information they receive from dispatch. *Id.* It appears that the majority now has elected to depart from this view.

The facts in this case fit within the scenarios described in *Villasenor* because Officer Pallas and Officer Murphy were working together and sharing information in a coordinated fashion. While off duty, Pallas became concerned when he observed Bell departing from an Albertsons grocery store. Pallas noted from his appearance and demeanor that Bell appeared intoxicated. As Pallas followed Bell as he drove away, Pallas immediately called Murphy, who directed Pallas to contact dispatch, which he did. As noted by the majority, Pallas gave dispatch "a description of the vehicle, the license plate number, and reported that the driver appeared to be intoxicated." When Pallas later passed the investigation to the on-duty officer, Murphy, with whom he had been communicating, he notified dispatch of Bell's location. Murphy received the information from dispatch and, *acting upon that information*, went to Bell's home, noticed that the car identified by

12

Pallas was parked in the driveway, observed that its engine was still warm, and knocked on Bell's front door. He met Bell who, in addition to being unsteady on his feet and smelling of alcohol, admitted to (1) just returning from Albertsons and (2) drinking five alcoholic beverages. In other words, Bell expressly confirmed to the officer the collective knowledge and reasonable suspicion shared by the other officer. Only after confirming this did Murphy perform a field sobriety test, which Bell failed. Bell was then arrested and later given a breath alcohol test, which showed his blood alcohol content to be 0.326 and 0.330—over four times the legal limit. Frankly, it is hard to characterize this as anything other than good police work.

Although it is tempting to compare this case to *Reagan*, which the majority has done, this matter turns on a significantly different fact. *Reagan* concerned a *citizen's report* of a possibly intoxicated driver. *Reagan*, 169 Idaho at 692, 502 P.3d at 1030. Importantly, no law enforcement officers saw Reagan driving her vehicle while intoxicated. *See id.* Thus, the collective knowledge doctrine was inapplicable because it only arises when an officer in the field supplies information to other officers. *Compare Reagan*, 169 Idaho at 698, 502 P.3d at 1036, *with Carr*, 123 Idaho at 130, 844 P.2d at 1380. In the case at bar, law enforcement officers supplied all the information. The first officer witnessed Bell possibly driving while intoxicated and the second officer, having received this information directly *from the first officer <u>and</u> from dispatch*, went to the driver's home and confirmed everything that had been reported. I agree with the majority that even though "the collective knowledge doctrine eliminates the requirement of personal knowledge, it does not eliminate the requirement of some knowledge." *Amstutz*, 169 Idaho at 149, 492 P.3d at 1108. However, this is a case where the arresting officer possessed far more than just "some knowledge." In fact, he was informed of almost everything the initial officer investigating the case had personally observed. Nevertheless, the majority concludes that because Murphy did not actually see Bell driving, he could not effectuate a misdemeanor arrest.

While I still respect *Clarke* as good law in the context in which it was decided, I do not read it to abrogate the collective knowledge doctrine when applied to misdemeanor arrests. Yet, the majority departs from our collective knowledge doctrine case law—even those cases decided in the context of *Clarke*. I cannot join in such a departure. The implications of this ruling for law enforcement are legion. For example, when an officer goes off duty at midnight and hands an ongoing investigation to another, must the second officer have the first officer present if he later makes an arrest based on information supplied by the first? Can officers no longer rely on

13

information provided by dispatch to develop probable cause to make an arrest? Can an offender who is seen vandalizing a public space by one officer evade arrest by a second—with knowledge communicated from the first—simply because the offender had already dropped his paint can? Such applications of the majority's holding will not only undermine the collective knowledge doctrine, but they will also impede law enforcement's ability to protect the public.

In sum, I am reluctant to follow the majority as it ventures into territory that may significantly—and unnecessarily—interfere with the day-to-day operations of law enforcement agencies throughout the state, without a constitutional compulsion to do so. Thus, while the *Clarke* train may continue to roll onward, for me, this application of its holding is the end of the line. Accordingly, I respectfully dissent.